# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————

| | | |
|---|---|---|
| NATASHA RICHARDSON, *et al.*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 2:18-cv-01758-JMG |
| | : | |
| BARBOUR, *et al.*, | : | |
| Defendants. | : | |

———————————————————

## MEMORANDUM OPINION

Plaintiffs, a mother and her minor children, contend that in the early morning hours of April 28, 2016, police officers forcibly entered their Darby home, physically accosting and detaining Plaintiffs at gunpoint, causing injuries to Plaintiffs. Plaintiffs contend further that the officers failed to produce a search or arrest warrant. Defendants, the police officers and their various municipal employers, have filed five individual Motions to Dismiss Plaintiffs' Second Amended Complaint. While certain discrete counts and parties are dismissed here, the case as a whole survives for the reasons set forth below.

## I.   FACTUAL BACKGROUND

Taking Plaintiff's factual allegations to be true solely for the purposes of this Memorandum Opinion,[1] the facts of this case are as follows. According to the Second Amended Complaint ("SAC"), police officers broke down the front door of Plaintiffs' residence at 519 Pine Street in Darby, Pennsylvania, around 6:15 a.m. on April 28, 2016. SAC ¶ 19. Plaintiffs allege that officers did not have a warrant to enter the house. *Id.* ¶ 20. Plaintiffs allege that the officers pointed

———————————————————

[1] When reviewing a motion to dismiss under Federal Rule of Procedure 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

weapons at the house's occupants, including minors. *Id.* ¶¶21-22. Plaintiffs allege that officers pulled minor Tysheem Thomas from his bed, threw him on the floor, and pointed a rifle at the back of his head while asking "where's Puma?" *Id.* ¶¶ 23-24. Plaintiffs responded that no one by that name lived at the residence. *Id.* ¶ 24. Plaintiff Natasha Richardson alleges she repeatedly asked the officers whether they had a warrant but did not receive a reply. *Id.* ¶25. The officers left after Natasha Richardson showed them a lease she had signed for the residence three months earlier. *Id.* ¶¶ 26-27. Plaintiffs allege that the officers exited without providing any medical assistance. *Id.* ¶ 27. Plaintiffs allege physical and emotional injuries. *Id.* ¶¶ 39, 41, 43-44.

## II.    PROCEDURAL HISTORY

Plaintiffs Natasha Richardson, Tyree Thomas, Tymeer Thomas, and Tysheem Thomas filed their original Complaint against Darby Borough, Delaware County, Unknown Officers of Darby Borough, and the County of Delaware on April 26, 2018. *See* ECF No. 1.

Defendants Darby Borough and Delaware County filed motions to dismiss the original Complaint. *See* ECF Nos. 5, 6. Plaintiffs filed a response to these motions to dismiss (ECF No. 7) and an Amended Complaint (ECF No. 8). The First Amended Complaint ("FAC") named Darby Borough, Delaware County, Unknown Officers of Darby Borough, and the County of Delaware as defendants. *See* ECF No. 8 at 1. Defendants Darby Borough and Delaware County then filed motions to dismiss the FAC. *See* ECF Nos. 9, 10. Plaintiffs opposed the motions. *See* ECF No. 11. Judge Petrese B. Tucker denied the motions to dismiss the original Complaint as moot. *See* ECF No. 12. Judge Tucker also granted Defendants' Darby Borough and Delaware County's motions to dismiss as to Count II of the FAC and dismissed the *Monell* claims against those entities with prejudice. *See* Dismissal Order, ECF No. 13.

On April 12, 2019, Plaintiffs filed an application/petition for discovery to learn the identities of the unnamed officer defendants. *See* ECF No. 16. The petition said that Plaintiff Natasha Richardson repeatedly asked officers if they had a warrant to enter her home on the incident date and did not receive an answer, and alleged that Plaintiffs' counsel "repeatedly asked defense counsel to identify the officers involved" in the incident and was told counsel was "working on it" but never received the information. *Id.* ¶¶ 4-5. On May 14, 2019, Judge Tucker granted Plaintiffs' petition and required defense counsel to disclose the identities of the unknown police officers. *See* ECF No. 17. Plaintiffs filed their SAC on May 31, 2019 (ECF No. 18), naming Robert Barbour, Tim Bernhardt, Coleman, Kevin Wiley, Wooding, Bill Wrighter, Flynn, Jay Greene, Shawn Kenny, John Martin, Kristine McAleer, Robert McCaughin, John Millison, John News, and Michael Taylor (collectively, the "Individual Defendants"), Haverford Township, Darby Borough, Tinicum Township, Upper Darby Township, and Clifton Heights Borough (collectively, the "Municipal Defendants").[2]

---

[2] The SAC contains the following claims:

    Count I against the Individual Defendants for violations of the Fourth Amendment using excessive force, false detention, and false arrest under Section 1983 of the Civil Rights Act;

    Count II against the Municipal Defendants for failure to train, supervise, and discipline defendants unknown officer [sic] under Section 1983 of the Civil Rights Act and "Monell";

    Count III against the Individual Defendatns for Assault and Battery – alleging plaintiffs were physically injured (unspecified) and "sustaining severe and significant emotional distress;"

    Count IV against the Individual Defendants for Intentional Infliction of Emotional Distress;

    And Plaintiffs allege damages against all Defendants for physical pain – past and future; for severe mental anguish – past and future; for being deprived of constitutional rights; for future economic damages; and for "permanent residuals" suffered both in the past and anticipated in the future.

Currently pending are five Motions to Dismiss.[3] Although filed separately, the Motions contain near-identical arguments[4] and Plaintiffs responded in one Opposition Brief. *See* ECF No. 50. On February 25, 2020, this case was transferred from Judge Tucker to this Court. *See* ECF No. 51. This Court held a telephonic Rule 16 conference with the parties on March 11, 2020, and issued a scheduling order thereafter. *See* ECF Nos. 53, 54.

## III.    STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations must be sufficient to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). These factual allegations need not be detailed, *Twombly*, 550 U.S. at 555, but "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Still, the Court does not need to accept conclusory statements unsupported by facts as true. *Iqbal*, 556 U.S. at 686. The issue is not whether the plaintiff will prevail in the end but whether the complaint rises to the level that is "sufficient to cross the federal court's threshold." *Skinner v.*

---

[3] The Motions are as follows: (1) Motion to Dismiss the SAC for Failure to State a Claim and Motion for More Definite Statement by Clifton Heights Borough, John Martin, Robert McCaughin, and Officer Wooding (ECF No. 45); (2) Motion to Dismiss the SAC for Failure to State a Claim and Motion for More Definite Statement by Tinicum Township, Kevin Wiley, and Bill Wrighter (ECF No. 46); Motion to Dismiss the SAC for Failure to State a Claim and Motion for More Definite Statement by Tim Bernhardt, Shawn Kenny, Kristine McAleer, John Million, John News, Michael Taylor, and Upper Darby Township (ECF No. 47); Motion to Dismiss for Failure to State a Claim by Coleman, Flynn, and Haverford Township (ECF No. 48); and Motion to Dismiss for Failure to State a Claim and Motion for More Definite Statement by Robert Barbour, Darby Borough, and Jay Greene (ECF No. 49).

[4] Defendants Darby Borough and Officers Robert Barbour and Jay Greene's Motion also explicitly incorporated the Memorandum of Law submitted by Defendants Haverford Township and Officers Coleman and Flynn. *See* ECF No. 49 at 6.

*Switzer*, 562 U.S. 521, 530 (2011). At this stage, the Court is determining only whether the plaintiff will be allowed to seek evidence in support of the claims in the complaint. *See Yoast v. Pottstown Borough*, 2020 WL 529882, at *3 n.9 (E.D. Pa. Feb. 3, 2020) (citing *Twombly*, 550 U.S. at 556, 558-59). A court must "draw on its judicial experience and common sense" to make this context-specific determination. *Iqbal*, 556 U.S. at 686.

Eastern District of Pennsylvania Local Rule 7.1(c) provides that "[u]nless the Court directs otherwise, any party opposing the motion shall serve a brief in opposition . . . within fourteen (14) days after service of the motion and supporting brief. In the absence of timely response, the motion may be granted as uncontested . . . ." E.D. Pa. Local R. 7.1(c). Nonetheless, a 12(b)(6) motion should not be granted "without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions." *Ray v. Reed*, 240 Fed. App'x 455, 456 (3d Cir. 2007) (citation omitted).

## IV.   DISCUSSION

### A.   *Monell* claims against Municipal Defendants

Plaintiffs have failed to oppose this portion of Defendants' Motions to Dismiss except as they relate to the City of Chester, against whom Plaintiffs have not advanced a claim.[5] Thus, the

---

[5] In Count II of the Plaintiffs' SAC, the named defendants are "Darby Borough, Clifton Heights Township, Upper Darby Township, Tinicum Township, and Haverford Township." *See* SAC at 7. Plaintiffs titled Section F of their Opposition that "The Monell claim against the *City of Chester* in Count II of plaintiffs' complaint should not be dismissed" (Pls' Opp., ECF No. 50 at 11) (emphasis added) and argued therein that "[i]t is alleged that the *City of Chester* had notice from prior incidents of misconduct of these police officers and their repeated acts of violating civil rights of individuals including the plaintiffs, by engaging in excessive force and illegal false detention." Pls.' Opp'n at 12, ECF No. 50 (emphasis added). Plaintiffs' Opposition Section F also refers to actions by "defendant officers acting under color of law in their official capacities as police officers for their respective municipalities" but never names any of the Municipal Defendants who moved to dismiss this count. *Id.*

Motions to Dismiss the *Monell* claims against all other municipal entities (collectively, the "Municipal Defendants") shall be granted as unopposed.[6]

Nonetheless, a court should not grant a Rule 12(b)(6) motion without analyzing the merits. *See Ray*, 240 Fed. App'x at 456. Plaintiffs' SAC fails to allege a sufficient claim for failure to train or supervise/discipline. *See* SAC ¶¶ 34-37, ECF No. 18. A municipal entity cannot be held liable under 42 U.S.C. § 1983 under a theory of *respondeat superior* for its employees' constitutional torts. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To bring a *Monell* claim, a plaintiff must establish that (1) a constitutionally-protected right has been violated, and (2) the alleged violation resulted from municipal policy, custom, or deliberate indifference. *Id.* at 694-95.

There are "rigorous standards of culpability and causation" necessary to incur municipal liability. *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014). It is appropriate to dismiss a case based on municipal liability alleging failure to train for failure to state a claim when the complaint fails to attribute a policy or custom to a municipal decision maker or to show "prior notice through a pattern of similar unconstitutional conduct." *Id.* at 105-06. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).

---

[6] This court has held that "plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested." *Celestial Cmty. Dev. Corp., Inc., v. City of Philadelphia*, 901 F.Supp.2d 566, 578 (E.D. Pa. 2010); *Ortiz v. Phelan Hallian Diamond & Jones, LLP,* Civil Action No. 16-4826, 2017 WL 2021062, at *2 (E.D. Pa. May 12, 2017) (same); *Nelson v. DeVry, Inc.*, No. 07-4436, 2009 WL 1213640, at *10 (E.D. Pa. Apr. 23, 2009) ("Failure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed.").

The allegations supporting Plaintiffs' failure to train, supervise, or discipline claim are contained in four paragraphs:

> 34.    The foregoing paragraphs are incorporated in this Count but will not be restated for the sake of brevity.
>
> 35.    Defendants, Darby Borough, Clifton Heights Township, Upper Darby Township, Tinicum Township and Haverford Township and its police departments, as a matter of policy and practice failed to discipline, train, supervise or otherwise sanction their officers who have violated the rights of citizens by illegally assaulting citizens by pointing weapons at them in fear of death and throwing them without cause, including the plaintiff's, thus encouraging the defendant officers in this case to engage in assaulting citizens.
>
> 36.    Defendants, Darby Borough, Clifton Heights Township, Upper Darby Township, Tinicum Township and Haverford Township and its police departments, as a matter of policy and practice failed to train properly its officers, with respect to the constitutional, statutory and departmental limits of their authority including refraining from assaulting citizens.
>
> 37.    The defendants, Darby Borough, Clifton Heights Township, Upper Darby Township, Tinicum Township and Haverford Township and its Police Departments were on actual notice of a need to train, supervise, discipline or terminate the defendant officers, prior to the incident in question, as other similar incidents of assaulting incidents by pointing weapons at them in fear of death and throwing them without cause have occurred in the past involving defendant officers.

*Id.* ¶¶ 34-37.

Plaintiffs have adequately alleged a violation of their Fourth Amendment rights with the facts incorporated by reference in this section. *See id.* ¶¶ 13-33. On a motion to dismiss, the court takes all facts as true and makes all inferences in the non-moving party's favor. *Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

However, Plaintiffs' allegations do not clearly identify a policy or custom promulgated by any or all of the Municipal Defendants.  *See* SAC ¶ 35, ECF No. 18. "A policy cannot ordinarily be inferred from a single instance of illegality . . . ." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). "[T]he touchstone of the § 1983 action against a government body is an

allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Canton v. Harris*, 489 U.S. 378, 394 (1989) (citing *Monell*, 436 U.S. at 690). Only if a failure to train reflects a purposeful choice by the municipality does the failure constitute an actionable city 'policy.' *Canton*, 489 U.S. at 388-39.

Moreover, Plaintiffs have only made sparse, conclusory allegations without substantiating facts to plead that the alleged constitutional violation(s) resulted from the Municipal Defendants' municipal policy, custom, or deliberate indifference. *See* SAC ¶¶ 35-36, ECF No. 18. There are no allegations that the Individual Defendants were not properly trained before the incident date. This is insufficient to survive dismissal under *Twombly* and *Iqbal*.

Plaintiffs' allegations do not show a particular or specific policy[7] or custom[8] "or how it allowed the claimed constitutional violation to occur." *Wood*, 568 F. App'x at 105. The SAC also fails to "link the alleged offending policies or customs to anyone within [a municipality] who had policy-making authority." *Rees v. Office of Children & Youth*, 473 Fed. App'x 139, 143 (3d Cir. 2012). As was the case with the FAC, the SAC does not name any policy maker or allege that the policy maker had knowledge of and allowed the failure to train. *See* Dismissal Order at 6, ECF No. 13. This alone is fatal to Plaintiffs' *Monell* claims. *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (finding plaintiff's failure to "allege conduct by a municipal decisionmaker" was fatal to *Monell* claim).

---

[7] The Third Circuit explained that when a decision maker with final authority to establish municipal policy issues an official proclamation, policy, or edict, a policy is made. *Wright v. City of Philadelphia*, 685 Fed. App'x. 142, 146 (3d Cir. 2017) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

[8] A "municipal custom" is one that "has not received formal approval through the government's official decision-making channels" but is so widespread as to have the force of law.  *See Monell*, 436 U.S. at 690-691 (citation omitted).

Additionally, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference" for purposes of failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Owens v. Coleman*, 629 Fed. App'x 163, 167 (3d Cir. 2015).[9] To prove a failure to train by deliberate indifference through a pattern of practice, a plaintiff must show that the "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990). In other words, they must show that the municipality's failure to train employees "has caused a pattern of violations." *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Establishing municipal liability for inadequate training carries a high burden for plaintiffs. *See Kline v. Mansfield*, 255 Fed. App'x 624, 629 (3d Cir. 2007); *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (finding this standard "difficult" for plaintiffs).

Plaintiffs have not amended the substance of their *Monell* allegations regarding evidence of a pattern of practice from the FAC, which Judge Tucker previously dismissed against Darby Borough and Delaware County. *See* FAC ¶ 30, ECF No. 8; SAC ¶ 37, ECF No. 18; Dismissal Order, ECF No. 13. As noted by Judge Tucker, "[t]he broad allegation that others have allegedly been treated similarly is not enough." Dismissal Order at 6, ECF No. 13. Alleging there is a pattern of practice without any factual support, as Plaintiffs here have alleged that Defendants were on "actual notice" because of "other similar incidents of assaulting citizens," is insufficient to move Plaintiffs' claims from conceivable to plausible. *See* SAC ¶ 37, ECF No. 18; *see also Twombly*,

---

[9] Although it is possible to allege deliberate indifference without demonstrating such a pattern, Plaintiffs have not alleged the single-incident theory here. *See Canton*, 489 U.S. at 390 ("But it may happen that in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."); *contrast Connick*, 563 U.S. at 64 (finding that "[t]he obvious need for specific legal training that was present in the *Canton* scenario is absent here" concerning lack of training for district attorneys about *Brady* violations).

550 U.S. at 570 ("plaintiffs here have not nudged their claims across the line from conceivable to plausible"); *Kline,* 255 Fed. App'x at 630 (3d Cir. 2007) (finding plaintiff's pattern evidence too attenuated from her circumstances to support failure to train theory); *Jacobs v. Palmer*, No. 14-5797, 2015 WL 1033294, at *6 n.4 (E.D. Pa. Mar. 10, 2015) (finding broad allegations as to "other similar incidents" involving defendant "patently speculative" and conclusory).

In sum, the SAC does not sufficiently allege facts regarding a particular policy or custom, a particular policy or decision maker, a deliberate decision by the policy maker, or notice to the Municipal Defendants through a pattern of similar constitutional violations. *See McTernan v. City of York*, 564 F.3d at 658 ("Mere assertion of an entitlement to relief, without some factual 'showing' is insufficient under Fed. R. Civ. P. 8(a)(2).").  For the foregoing reasons, the Motions to Dismiss are **GRANTED** as to the *Monell* claims. Count II is hereby dismissed with prejudice and the Municipal Defendants are dismissed with prejudice.[10]

B. <u>*Res Judicata*</u>

Defendant Darby Borough argues that the *Monell* claim against it should be dismissed because of *res judicata*, or claim preclusion. *See* ECF No. 49 at 5. *Res judicata* requires a final judgment on the merits in a prior suit involving the same parties or their privities as in a subsequent suit based on the same cause of action. *See Bd. of Trs. Of Trucking Emps. of New Jersey Welfare Fund, Inc.-Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992).

Judge Petrese B. Tucker previously dismissed Plaintiffs' *Monell* claims against Darby Borough as alleged in the FAC. *See* Dismissal Order, ECF No. 13. However, this case is the

---

[10] Plaintiffs have not sought leave to file a third amended complaint in the event the Motions to Dismiss are granted nor have they indicated any facts which would cure these deficiencies. Plaintiffs have been given adequate opportunity to state all of their claims and any further leave to amend is denied.

continuation of the same and not a subsequent suit. Darby Borough argues that Plaintiffs cannot raise the same claims against it that were previously dismissed without having advanced any new facts or legal theories. *See* ECF No. 49 at 5. Plaintiffs do not oppose this part of Darby Borough's motion. *See* Local Rule 7.1(c). Nonetheless, the court need not expound on *res judicata* having already found that the *Monell* claim against Darby Borough is rightfully dismissed with prejudice.

###### C.   Statute of Limitations

Defendants argue that the SAC should be dismissed in its entirety because it was filed against the moving defendants on May 31, 2019, outside the two-year personal injury and intentional tort statute of limitations from the date the claims accrued on April 28, 2016, and it added new defendants.[11]

Plaintiffs and Defendants have not addressed the fact that Plaintiffs neither requested leave from this Court nor obtained written consent from opposing counsel to file the SAC. *See* Fed. R. Civ. P. 15(a); *Fauver v. Shane*, 213 F.3d 113, 115 (3d. Cir. 2000). However, failure to request leave does not mandate denial of the amendment. *See Deeley v. Genesis Healthcare Corp.*, Civil Action No. 10-1242, 2010 WL 3239352, at *2 (E.D. Pa. Aug. 16, 2010) (denying defendants' motion to strike and granting plaintiff retroactive leave to file second amended complaint). *See also Beale v. Dep't of Justice*, Civ. A. No. 06-2186, 2007 WL 327465, at *3 (D.N.J. Jan. 30, 2007) (granting plaintiff retroactive leave to amend although second amended complaint was filed without consent of defendant or leave of court). As such, the court must treat the SAC as a proposed amended complaint and engage in a Rule 15(a) analysis.

---

[11] The newly added defendants are: Robert Barbour, Tim Bernhard, Coleman, Flynn, Jay Greene, Shawn Kenny, John Martin, Kristine McAleer, Robert McLaughlin, John Million, John News, Michael Taylor, Kevin Wiley, Wooding, and Bill Wrighter (collectively, the "Individual Defendants"), along with Clifton Heights Borough, Haverford Township, Tinicum Township and Upper Darby Township. *See* SAC at 1, ECF No. 18.

It is axiomatic that a court should freely give leave to amend unless the court finds undue delay, that the amendment would be inequitable and prejudice the non-moving party, or that it would be futile. *See* Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1982); *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). An amended complaint would be futile if it is barred by the statute of limitations. *See Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (affirming district court's denial of leave to amend when amended complaint would not withstand renewed motion for judgment on the pleadings due to statute of limitations bar). However, Rule 15(c) may allow relation back to a timely filed complaint, permitting amendment. *See* Fed. R. Civ. P. 15(c)(1)(C).

When determining whether to give leave to amend, a court must consider prejudice to the defendants caused by undue delay or the moving party's bad faith. *See Cahill v. Carroll*, 695 F. Supp. 836, 838 (E.D. Pa. 1988). Although the delay between the original Complaint and SAC was substantial, it was not so long as to impute a dilatory motive or require denial of leave to amend. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (finding delay alone insufficient to justify denial of leave to amend, particularly if plaintiff has offered justification for delay such as not knowing identity of proper defendant); *Tefft v. Seward*, 689 F.2d 637, 639-40 (6th Cir. 1982) (allowing amendment after delay of four years); *Buder v. Merrill Lynch, Pierce, Fenner, & Smith Inc.*, 644 F.2d 690, 694 (8th Cir. 1981) (allowing amendment after delay of two and a half years).

Here, Plaintiffs learned of the newly named Defendants' identities after the Court granted Plaintiffs' petition for discovery on May 14, 2019. *See* ECF Nos. 16, 17. Plaintiffs filed the SAC seventeen days later on May 31, 2019, just over a year after the original complaint was filed on April 26, 2018. *See* ECF Nos. 1, 18. Plaintiffs assert that they did not know Defendants' proper identities and the statute of limitations does not bar the claims in the SAC because the claims relate

back to the date of the original complaint. Pls' Opp'n at 5-7, ECF No. 50. Given these circumstances, the Court will **GRANT** retroactive amendment, and will assess the SAC under Rule 15(c) to determine if the statute of limitations bar requires dismissal or if the SAC relates back to the original complaint.

If a plaintiff files an amended complaint adding parties after the statute of limitations expires, the question is whether it relates back to a timely-filed complaint. *See* Fed. R. Civ. P. 15(c); *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012) (describing relation back under Fed. R. Civ. P. 15(c)). The statute of limitations period for a section 1983 action is two years, which is also the Pennsylvania statute of limitations for a personal injury action. *See* 42 Pa.C.S. § 5524; *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). An action under 42 U.S.C. § 1983 accrues when the plaintiff knew or should have known of the injury upon which the action is based. *Montanez v. Sec'y Pa. Dep't of Corr.*, 763 F.3d 257, 266 (3d Cir. 2014). The supplementary state law claims fall under Pennsylvania's two-year statute of limitations for intentional torts. 42 Pa.C.S.A. § 5524; *Meadows v. Goodman*, 993 A.2d 912, 915 (Pa. Super. Ct. 2010). The federal and state law claims also accrue at the same time. *Little v. City and County of Philadelphia*, Civil Action No. 07-5361, 2008 WL 2704579, at *4 (E.D. Pa. July 3, 2008) (finding state law personal injury claims for intentional infliction of emotional distress, false arrest, and false imprisonment based on the same operative facts as section 1983 claims all accrued on the same incident date – the date of arrest and incarceration).

Here, the date of accrual is undisputedly the incident date, April 28, 2016. SAC ¶ 19, ECF No. 18. In order to extend this time period, Plaintiffs' claims must be subject to either relation back

under Rule 15(c) or some other form of tolling the statute of limitations.[12] Plaintiffs only argue for

relation back under Rule 15(c). *See* Pls' Opp'n at 5, ECF No. 18.

To prove relation back under Rule 15(c)(1)(C), a plaintiff must show:

(1) the claim or defense set forth in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading; (2) within the time period provided in Rule 4(m), the party or parties to be added received notice of the institution of the suit and would not be prejudiced in maintaining a defense; and (3) the party sought to be added knew that, but for a mistake concerning his or her identity, he or she would have been made a party to the action.

*Garvin v. City of Philadelphia*, 354 F.3d 215, 222 (3d Cir. 2003) (citing *Singletary v. Pennsylvania Dep't of Corrections*, 266 F.3d 186, 194 (3d Cir. 2001) (describing Rule 15(c)(3)).[13]

---

[12] In the Third Circuit, federal not state law controls questions of relation back. *See Loudenslager v. Teeple*, 466 F.2d 249, 250 (3d Cir. 1972) (finding "[Rule 15] is entirely a matter of Federal practice"); *Darmanchev v. Roytshteyn*, 234 F.R.D. 78, 80 n.2-3 (E.D. Pa. 2005) (acknowledging the doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) in diversity cases, which requires federal courts to apply state substantive law but federal procedural law, and the Third Circuit's determination that "relation back" is procedural not substantive).

[13] Since the *Singletary* and *Garvin* decisions the Rule has been updated to eliminate section 15(c)(3) but it maintains the same requirements. The Rule reads:

(c) Relation Back of Amendments.
    (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
        (A) the law that provides the applicable statute of limitations allows relation back;
        (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out-- in the original pleading; or
        (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
            (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
            (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

Defendants argue that there is no relation back under Rule 15(c). Plaintiffs argue that there is relation back. There is no disagreement about the first part of the inquiry, "that the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Singletary*, 266 F.3d at 193 (citing Fed. R. Civ. P. 15(c)(2)). Here, the claims in the SAC, FAC, and original Complaint arose out of the same set of facts. However, the issue of notice is in dispute.

Notice concerns whether the defendants knew or should have known "that [they] would have been named as [defendants] but for an error." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (citing Fed. R. Civ. P. 15(c)(1)(C)(ii)). "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant[s]* knew or should have known during the Rule 4(m) period, not what the *plaintiff[s]* knew or should have known at the time of filing [their] original complaint." *Id.* If Plaintiffs can show that the new defendants were on imputed notice of the complaint within the 90-day Rule 4(m) time period, relation back would be appropriate despite the mistake in naming the defendants as "Unidentified Officers of Darby Borough and the County of Delaware." *See* Compl. at 1, ECF No. 1.[14]

The issue of mistake concerns the error element of the 'but for' analysis above. The Third Circuit has recognized found that the addition of new, previously misnamed defendants is permitted under Rule 15(c). *See Singletary*, 266 F.3d at 201 (citing *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 175 (3d Cir. 1977) (finding amendment of a "John Doe" or "unknown employee" complaint sufficient for 'mistake' under 15(c)(3) relation back analysis)); *Wine v. EMSA Ltd. Partnership*, 167 F.R.D. 34, 38 (E.D. Pa. 1996) (same). Defendants argue that the

---

[14] Plaintiffs and Defendants mistakenly refer to the timeframe under Rule 4(m) as 120 days, but this was the old service timeframe before the rule changed in December 2015. *See* Fed. R. Civ. P. 4(m). The timeframe is now 90 days from the date the complaint is filed. *Id.*

identification of these officers as belonging to either Darby Borough or the County of Delaware precludes relation back for any officers "not identified" or "not specifically identified" in the original Complaint without providing any law to support this argument. *See* ECF No. 45 at 7, No. 46 at 4, ECF No. 47 at 4, ECF No. 48 at 8, ECF No. 49 at 7. Defendants Barbour and Greene make this same argument despite their employment as police officers for Darby Borough. *See* ECF No. 49 at 7.

In *dicta*, the Third Circuit opined that a psychologist may not have known he would be named in the complaint because it only named "Unknown *Corrections Officers*." *Singletary*, 266 F.3d at 201. In the instant case, the occupation of the defendants was clearly identified, and Plaintiffs aver that all the municipalities worked together on the incident date. *See generally*, SAC, ECF No. 18; Pls.' Opp'n Ex. 2, ECF No. 50. Also like in *Singletary*, the issue of most concern is whether Defendants had notice during the requisite timeframe. *Singletary*, 266 F.3d at 201-02. In *Garvin*, the Third Circuit noted, in *dicta*, that if it did not allow substitution for "John Doe" or "unknown officer" defendants, it would "render the § 1983 statute of limitations much shorter" for civil rights claimants than for other civil litigants, as civil rights claimants would be required to file well before the statute had run given the amount of discovery often required for plaintiffs to learn unknown officers' names. *Id.* (quoting *Singletary*, 266 F.3d at 190). The *Garvin* court also noted that the district court had provided five months of discovery at the beginning of the case in its scheduling order, during which plaintiff Garvin could have attempted to compel the identities of the unknown defendants. *Id.* That is not the case here, where there was no scheduling order in place until well after Plaintiffs filed the SAC. *See* Scheduling Order, ECF No. 54 (March 27, 2020).

Plaintiffs do not assert actual notice but argue that notice should be imputed to the newly added Defendants. *See* Pls.' Opp'n at 6-7, ECF No. 50. The docket makes clear that all Defendants

are currently represented by the same private law firm. There are two methods for demonstrating imputed notice: (1) the shared attorney method[15] and (2) identity of interest between the original and proposed new defendant.[16] *Singletary*, 266 F.3d at 195. As this information is in Defendants' possession, and for the reasons explained below, this is an issue that must be fleshed out in discovery. *See Stewart v. Wenerowicz*, Civil Action No. 12-4046, 2015 WL 5092865, at *6 (E.D. Pa. Aug. 27, 2015) (denying motions to dismiss based on statute of limitations to allow for discovery).

Plaintiffs argue that it required a court order for Defendants to reveal the Individual Defendants' identities. *See* Pls.' Opp'n at 6, ECF No. 50; ECF No. 16 (Petition for Discovery), ECF No. 17 (Order granting Discovery Petition). Defendants argue that Plaintiffs have not shown that there was anything preventing them from obtaining information about the newly named defendants' identities within the Rule 4(m) 90-day notice period. *See, e.g.,* ECF No. 48 at 8 ("The assertions in the Amended Complaint fail to demonstrate any due diligence by Plaintiff to properly identify and substitute names from those unidentified in the original Complaint."). However, the Supreme Court of the United States determined that Rule 15(c)(1)(C) "plainly sets forth an exhaustive list of requirements for relation back, and the plaintiff's diligence is not among them."

---

[15] The shared attorney method may provide notice to newly added defendants when all defendants are represented by attorneys from the same firm. *See, e.g., Wilson v. Hoerner*, Civil Action No. 13-1529, 2016 WL 5724481, at *6 (W.D. Pa. Sept. 30, 2016). *See also Browning v. Safmarine, Inc.*, 287 F.R.D. 288, 291 (D.N.J. 2012) (finding shared attorney method applicable based on the same law firm's representation of the original and new defendants); *Davis v. Corr. Med. Sys.*, 480 F.Supp.2d 754, 761 (D. Del. 2007) ("[T]he complaint on its face supports the inference that any investigation of the case by the shared attorneys (both with the same law firm) would have placed [the new defendants] on notice of . . . the action."). The crossover in representation would have had to occur within the requisite 90-day Rule 4(m) period, however. *See Garvin*, 354 F.3d at 223-225.

[16] The Third Circuit has explicitly held that police officers cannot be found to have imputed notice from their precincts or counties/boroughs unless they are higher ranking officials. *Garvin*, 354 F.3d at 227 (citing *Singletary*, 266 F.3d at 200; *Jacobsen v. Osborne*, 133 F.3d 315 (5th Cir. 1998)).

*Krupski*, 560 U.S. at 553 ("Moreover, the Rule mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion.").

Considering all of the above, the Court finds that it cannot determine relation back of the SAC on the face of the complaint. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (en banc), *aff'd* — U.S. ——, 140 S. Ct. 355 (2019). There is missing information concerning actual or imputed notice during the 90-day period after Plaintiffs filed the original Complaint, which would ultimately require the Court to consider matters outside the pleadings. *See Glover v. FDIC*, 698 F.3d 139, 146 (3d. Cir. 2012) ("[T]he touchstone for relation back is fair notice, because Rule 15(c) is based on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide'") (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)). Rule 15 is also construed liberally to support the principle that cases should be tried on the merits whenever possible. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984); *Johnson v. Goldstein*, 850 F. Supp. 327, 329 (E.D. Pa. 1994). Thus, the parties should have the opportunity to conduct discovery on this issue.[17]

For the foregoing reasons, the statute of limitations defense is **DENIED without prejudice** to allow for discovery as to whether the newly added Defendants had actual or constructive notice

---

[17] Given our decision here, we shall not explore the potential of a more expansive statute of limitations period when the plaintiffs are minors, a factor not raised by either party. *See Faison v. Sex Crimes Unit of Phila.*, 854 F. Supp. 1079, 1084 (E.D. Pa. 1994) (describing infancy exception to two-year statute of limitations under 42 Pa.C.S.A. § 553(b) as applied to section 1983 claims).

of the claims in the SAC within the 90-day notice period. Defendants may still raise this defense by motion for summary judgment or at trial if the facts and law warrant it.

> ### D. Qualified Immunity

The Court cannot yet determine whether the Individual Defendants (listed, *supra*, at 3) are entitled to qualified immunity. *See T.A. v. County of Delaware*, Civil Action No. 18-2141, 2019 WL 1228253, at *6 (E.D. Pa. Mar. 14, 2019) (deferring decision on qualified immunity until later stage of litigation). "[T]he importance of resolving qualified immunity questions early 'is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right.'" *Phillips*, 515 F.3d at 242 n.7 (citation omitted). There are issues of fact relating to Plaintiffs' allegations that Defendants did not have probable cause to enter Plaintiffs' house. *See* SAC ¶¶ 13-15, 29-30, ECF No. 18; *Anthony v. Seltzer*, 696 Fed. App'x 79, 83 (3d Cir. 2017) (affirming denial of qualified immunity at motion to dismiss stage); *Carswell v. Borough of Homestead*, 381 F.3d 235, 241 (3d Cir. 2004) (finding it is proper to determine qualified immunity at the summary judgment stage of a proceeding); *Dix v. City of Philadelphia*, No. 15-532, 2015 WL 4524248, at *6 (denying qualified immunity without prejudice at motion to dismiss stage when there was a question of fact concerning probable cause); *Underwood v. Commonwealth of Pa.*, No. 05–3452, 2006 WL 1147263, at *6 (E.D. Pa. 2006) (same).

Defendants have qualified immunity if their conduct did not violate "a clearly established statutory or constitutional right of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2001). A right is clearly established if the state of the law at the time of the violation gives state actors "fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Here, Plaintiffs have adequately

articulated a claim that their Fourth Amendment rights were violated sufficient to withstand a motion to dismiss, *see* SAC ¶¶13-33, ECF No. 18, but this is not the end of the inquiry for qualified immunity. "[T]here must be sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). It is clearly established that the Fourth Amendment "prohibits a police officer from arresting a citizen except upon probable cause." *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir.1995) (citation omitted).

The burden of establishing immunity is on the officer(s) claiming its protections. *Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010). The parties must conduct discovery on the facts surrounding the arrest warrant and the information Defendants had before entering Plaintiffs' residence to flesh out the issue of probable cause before the court can make a final ruling on qualified immunity. Whether Defendants had probable cause (based on a warrant or otherwise) to enter the house or if they had reasonable cause to believe they had probable cause will determine if their subsequent actions violated Plaintiffs' clearly established rights or were objectively reasonable. *See, e.g., District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) ("probable cause deals with probabilities and depends on the totality of the circumstances") (citation omitted). *See also Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996) (Finding that a careful examination of the record is necessary for any assertion of qualified immunity to establish "a detailed factual description of the actions of each individual defendant").

Thus, the issue does not end here, but it is not appropriate to afford the Individual Defendants with qualified immunity at this stage in the proceedings. This defense is **DENIED without prejudice** as to all Individual Defendants.

E.  False arrest/detention

Defendants argue that Count I, false arrest/detention against the individual defendants under section 1983 should be dismissed for failure to state a claim. "The proper inquiry in a § 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).

Whether probable cause existed at the time of an arrest is typically a factual determination based on the officers' knowledge at the time of an arrest. *See Commonwealth. v. Rodriguez*, 585 A.2d 988, 990 (Pa. 1991). Defendants argue that because plaintiffs have not claimed that there was no arrest warrant for a man named "Puma," their claim must be dismissed. *See, e.g.,* ECF No. 46 at 5. However, Plaintiffs' SAC clearly alleges a lack of probable cause. *See* SAC, ECF No. 18 ¶¶ 13-15, 25, 29-30. Moreover, defective warrants cannot provide probable cause for an arrest. *See Berg v. County of Allegheny*, 219 F.3d 261 at 269-70 (3d Cir. 2000). It is true that "[o]rdinarily, it is reasonable for an officer to assume that a warrant has been issued for probable cause." *Id.* at 272. The Third Circuit has "generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant." *Id.* at 273 (citing cases). However, it also found that "an apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances." *Id.* If the warrant the officers relied on was defective or if their reliance on the warrant was unreasonable, there would be no probable cause.

In such an instance, the dispositive "inquiry is whether a reasonable [officer] could have believed that his or her conduct was lawful, in light of clearly established law and the information in the [officer's] possession." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997), *abrogated on*

*other grounds by Curley v. Klem*, 499 F.3d 199, 209-11 (3d Cir. 2007). Construing all well-pled facts as true as the court must on a motion to dismiss, the SAC alleges that there was no one named "Puma" at the residence, that Plaintiffs had leased the residence a full three months prior, and that Plaintiffs asked to see a warrant but did not receive an answer and were not shown one. These allegations state a sufficient claim that the police who entered Plaintiffs' residence in this instance lacked probable cause to look for "Puma" in that location and, therefore, lacked probable cause to detain Plaintiffs at gunpoint during the search of their home for "Puma." For these reasons, the Motions to Dismiss regarding false arrest, Count I, are **DENIED**.

    F.    Excessive Force

Defendants also move to dismiss Plaintiffs' claim for excessive force under section 1983 against the Individual Defendants for failure to state a claim. A claim for excessive force requires a plaintiff to show "that a 'seizure' occurred and that it was unreasonable under the circumstances. *Lamont v. New Jersey*, 637 F.3d 177, 182-83 (3d Cir. 2011) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)).

To examine whether police use of force is "excessive," the court must examine the totality of the factual circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Absence of injury does not legitimize otherwise excessive force. *Sharrar*, 128 F.3d at 822; *c.f. Kopec v. Tate*, 361 F.3d 772, 778 n.7 (3d Cir. 2004) (distinguishing cases with *de minimis* injuries resulting from use of force). The circumstances the court must consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985) (finding the inquiry is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure"). A seizure's reasonableness is also

based on whether it was justified by a warrant or probable cause. *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 147 (3d Cir.2005).

Here, Plaintiffs have sufficiently alleged that there was a seizure when they allege being forcibly dragged out of bed, having guns pointed at them, and being thrown on the floor when they were "eating breakfast and getting ready for school and work." *See* SAC ¶¶ 9-26, 28 (incorporating the preceding facts in Count I). At the pleading stage, a complaint need only contain "general factual allegations of injury resulting from the defendant's conduct . . . for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

Defendants requested that Plaintiffs be permitted to amend only the excessive force argument in Count I in order to give Defendants notice of the claims against each individual defendant and allow a better examination of the reasonableness of each individual defendant's actions. *See* ECF No. 45 at 6; ECF No. 46 at 6; ECF No. 47 at 7; ECF No. 48 at 11; ECF No. 49 at 10. At the pleadings stage, Plaintiffs need not articulate the actions of each individual Defendant. *See Torres v. Allentown Police Dep't*, Civil Action No. 13-3066, 2014 WL 4081477, at *6 (E.D. Pa. Aug. 18, 2014) (finding complaint sufficient although plaintiff did not identify the specific officer who was the alleged gunman). These issues may be further explored in discovery. *See id.*

The Court emphasizes that the pleadings state a sufficient claim that the *totality* of circumstances may have resulted in an unreasonable use of force. The Court is also not persuaded by Defendants' arguments that the allegations are insufficient as stated because they only concern "pointing guns and pulling an individual from a bed." *See, e.g.,* ECF No. 49 at 10; *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995) (finding handcuffing and pointing guns at a mother and

her children could constitute excessive force). The Court finds that the allegations here are sufficient to state a claim without amendment and, thus, the Motions to Dismiss are **DENIED** as to the excessive force allegations in Count I.

      G.   <u>Pennsylvania Subdivision Tort Claims Act local agency immunity and state law claims for assault/battery and IIED</u>

Individual police officers are immune from a plaintiff's state law claims under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S. §§ 8541 et seq. (1998), unless the conduct alleged by the plaintiff constitutes "willful misconduct" within the meaning of 42 Pa.C.S. § 8550. The conduct of a police officer will only constitute "willful misconduct" if the officer committed "misconduct which the perpetrator recognized as misconduct and which was carried out with the intention of achieving exactly that wrongful purpose." *In re City of Phila. Litig.*, 938 F. Supp. 1264, 1273 (E.D. Pa. 1996). *See also Byrd v. Duffy*, No. Civ.A. 96-0070, 1998 WL 961902 at *6–7 (E.D. Pa. 1998); *Renk v. City of Pittsburgh*, 641 A.2d 289, 291 (1994). In other words, "'willful misconduct' is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). Thus, if the court finds that the below claims for intentional torts are sufficiently pled, the PSTCA will not bar plaintiffs' claims at this stage. Accordingly, the Motions to Dismiss are **DENIED** as to the PSTCA.

      1.   *Assault and Battery Claims*

In Pennsylvania, "a claim brought . . . for excessive force by a police officer is a claim for assault and battery." *Renk*, 641 A.2d at 293. The appropriate standard for determining an officer's potential liability for assault and battery when making an arrest is whether excessive or unreasonable force was used in effectuating that arrest. *Id.*; *Perez v. Vega*, No. 5:18-cv-00997, 2019 WL 1045387, at *8 (E.D. Pa. Mar. 5, 2019).

Defendants argue that Plaintiffs' claims concerning pointing guns during the search are insufficient to state a cause of action. *See, e.g.,* ECF No. 48 at 14. However, this fact is not dispositive. *See Baker v. Monroe Twp.*, 50 F.3d 1186 (3d Cir. 1995); *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 352 (E.D. Pa. 2006) (finding officers pointing guns at plaintiffs' heads and yelling profanity at them was not excessive force and assault and battery *only after* trial testimony revealed the totality of the circumstances, including that the suspected crime was a felony, suspects/plaintiffs posed a possible threat to law enforcement, and plaintiffs ignored officers' initial attempt to stop their car).

Defendants also argue that there are insufficient facts to support this claim because, for instance, it would be reasonable to pull someone out of bed and onto the floor if that individual was noncompliant. *See, e.g.,* ECF No. 45 at 10. Plaintiffs do not need to anticipate and contradict all possible defenses or alternative explanations for Defendants' conduct at the pleadings stage. *See Kriss v. Fayette Cty.*, 827 F. Supp. 2d 477, 497 (W.D. Pa. 2011), *aff'd*, 504 F. App'x 182 (3d Cir. 2012); *Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, No. CIV.A. 11-4380, 2012 WL 3599368, at *5 (D.N.J. Aug. 17, 2012). Also contrary to Defendants' assertion, resisting arrest does not automatically preclude a finding of excessive force. *See Nelson v. Jarushek*, 109 F.3d 142, 146 (3d Cir. 1997) (quoting *Simpson v. City of Pickens*, 887 F. Supp. 126, 129 (S.D. Miss. 1995) ("[I]t is possible for a finding that [the defendant] was resisting arrest to coexist with a finding that the police used excessive force to subdue him."). Moreover, there is nothing in the record showing that Plaintiffs were noncompliant or that they posed a threat to the Individual Defendants, and the Court must construe all facts in Plaintiffs' favor on a motion to dismiss.

As explained, *supra*, the court finds Plaintiffs' pleadings for excessive force sufficient at this stage. The assault and battery claim is based on the same essential facts. As such, the court

will also not dismiss the assault and battery claims against defendant officers and these Motions are **DENIED** as to Count III.

      2.   *Intentional Infliction of Emotional Distress ("IIED") claim*

To prove a claim of intentional infliction of emotional distress under Pennsylvania law, a plaintiff must establish that: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979) (*en banc*); *see also Taylor v. Albert Einstein Med. Ctr.,* 562 Pa. 176, 181, 754 A.2d 650 (2000). The conduct alleged must have been "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005); *see also Fugarino v. Univ. Servs.*, 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000). This standard occurs as a matter of law where a recitation of facts to an average member of the community would "arouse resentment against the actor" and lead him to exclaim, "Outrageous!" Comment d, Restatement (Second) of Torts § 46; *Smith v. Sch. Dist. Phila.*, 112 F. Supp. 2d 417, 428 (E.D. Pa. 2000). As a preliminary matter, a court must determine if the defendant's conduct rises to the level of extremity and outrageousness to permit recovery. *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1998).

Additionally, the Third Circuit determined that a plaintiff "must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Reedy,* 615 F.3d at 231 (quoting *Swisher v. Pitz*, 2005 PA Super 56, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)) (quotation marks omitted); *Johnson v. Caparelli,* 425 Pa.Super. 404, 625 A.2d 668, 671 (Pa.Super.Ct.1993) (holding a plaintiff must establish physical injury or harm). Courts in this district have been split about whether severe emotional distress is sufficient to support a cause of action for IIED. *See,*

*e.g., Allstate Prop. & Cas. Ins. Co. v. Vargas*, No. 06-3368, 2006 U.S. Dist. LEXIS 95608, at *14 (E.D. Pa. Dec. 28, 2006) ("'[E]xtreme mental anguish, outrage, severe anxiety . . . painful embarrassment among her friends' do not constitute physical illnesses . . . ."); *but see McClease v. R.R. Donnelley & Sons Co.*, 226 F. Supp. 2d 695, 702-703 (E.D. Pa. 2002) (finding IIED claim sufficient where plaintiff alleged "serious emotional harm, psychological distress and damage"). Pennsylvania courts have recognized causes of action for IIED without a direct physical injury in narrow situations in which defendants were accused of aiming wrongful conduct specifically at particular plaintiffs or with a special impact on the plaintiff. *See, e.g., Chuy*, 595 F.2d at 1273 (sustaining IIED claim where defendant's team physician falsely stated to the press that plaintiff suffered from a potentially fatal disease). The Pennsylvania Supreme Court has characterized IIED as a "most limited" tort. See *Hoy v. Angelone*, 720 A.2d 745, 755 (Pa. 1998).

Defendants argue that the behavior that Plaintiffs allege in the complaint is not extreme and outrageous and that the claim must fail because Plaintiffs have not alleged the requisite physical injury. *See, e.g.,* ECF No. 47 at 12. The Court finds that Plaintiffs have alleged conduct that a jury may conclude was so extreme and outrageous as to shock the conscience where Plaintiff Tysheem Thomas is concerned. Plaintiffs allege that Defendants pulled the minor out of his bed and threw him on the floor "without cause." *See* SAC ¶¶ 23, 39, ECF No. 18.

The SAC does not allege specific injuries, but general allegations are sufficient to survive a motion to dismiss.[18] However, the SAC only provides facts supporting a claim for physical injury

---

[18] Expert evidence will be required to substantiate the injury in order to survive summary judgment. *See Robinson v. May Dep't Stores Co.*, 264 F. Supp. 2d 440, 444 (E.D. Pa. 2003). "Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress." *Kazatsky*, 527 A.2d at 995. This requirement ensures that claims for emotional distress rely on "objective proof." *Id.*

for Tysheem Thomas, and we are bound by the Third Circuit's interpretation that physical injury is required in most IIED cases. *See* SAC ¶¶ 23, 39, ECF No. 18; *Reedy,* 615 F.3d at 231. As such, and because amendment would be futile,[19] the court **GRANTS** in part the Motions as they concern the other Plaintiffs on Count IV and **DENIES** in part the Motions to Dismiss on Count IV as they concern Plaintiff Tysheem Thomas.

## V.     CONCLUSION

The Motions to Dismiss are **GRANTED in part** and **DENIED in part**. An appropriate order will follow.

DATED:                                                      BY THE COURT:

August 19, 2020

                                                            */s/ John M. Gallagher*
                                                            JOHN M. GALLAGHER
                                                            United States District Court Judge

---

[19] Amendment is futile if it "will not cure the deficiency in the original complaint or of the amended complaint cannot withstand a motion to dismiss." *Jablonski*, 863 F.2d at 292 (citation omitted).